FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 2 3 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FRANCO BELLI PLUMBING &
HEATING AND SONS, INC.,

    Plaintiff,

   - against -

LIBERTY MUTUAL INSURANCE
COMPANY,

    Defendant.

**MEMORANDUM, ORDER,
& JUDGMENT**

12-CV-128

**Appearances:**

For the plaintiff:  Terrence O'Connor
      Terrence O'Connor, P.C.
      1470 Bruckner Blvd.
      Bronx, NY 10473

For the defendant:  Marshall T. Potashner
      Jaffe & Asher, LLP
      600 Third Avenue
      New York, NY 10016

      David Shyer
      Jaffe & Asher, LLP
      600 Third Avenue
      New York, NY 10016

      Robert Gitelman
      Jaffe & Asher LLP
      600 Third Avenue
      New York, NY 10016

1



**JACK B. WEINSTEIN, Senior United States District Judge:**

| I. | Introduction | 2 |
|---|---|---|
| II. | Facts | 3 |
| | A. | Project | 4 |
| | B. | Insurance Policy | 4 |
| | C. | Gas Leak | 5 |
| | D. | State Action | 6 |
| | E. | SCA Threatens to Sue | 6 |
| | F. | Belli's Unsuccessful Tender | 6 |
| | G. | Instant Action | 7 |
| | H. | Potential SCA Claims Against Bovis and Belli | 7 |
| III. | Jurisdiction | 8 |
| IV. | Choice of Law | 8 |
| V. | Motion to Dismiss Standard | 9 |
| VI. | Duty to Defend | 9 |
| | A. | Generally | 10 |
| | B. | No Duty When Only Property Damaged is Insured's Defective Work Product | 11 |
| | C. | Defective Pipes Not an Occurrence Causing Property Damage | 14 |
| | D. | Speculative SCA Claims Not Considered | 15 |
| VII. | Conclusion | 16 |

## I.   Introduction

Bovis Lend-Lease LMB, Inc. ("Bovis"), a general contractor responsible for constructing a new school for the New York City School Construction Authority ("SCA"), contracted with plaintiff Franco Belli Plumbing and Heating and Sons, Inc. ("Belli") to install gas pipes in the building. After Bovis refused to pay Belli the full contract price for the work, Belli sued Bovis in the Supreme Court of New York, Bronx County. Notice of Removal 14-22 (Compl., *Franco Belli Plumbing & Heating & Sons, Inc. v. Bovis Lend Lease LMB, Inc. et al.*, No. 305323/2011 (Bronx Cnty. Sup Ct., Nov. 16, 2011)), Doc. Entry 1, Jan 11, 2011 ("Underlying Compl."). Bovis then counterclaimed for the cost of repairing a defective gas pipe installed by Belli. *Id.* 22-39 (Ans. & Counterclaim, *Franco Belli Plumbing & Heating & Sons, Inc. v. Bovis Lend*

2

*Lease LMB, Inc. et al.*, No. 305323/2011 (Bronx Cnty. Sup Ct., Nov. 16, 2011)) ("Underlying Ans. and Countercl.").

Belli sues its insurer, Liberty Mutual Insurance Company ("Liberty"), seeking a declaratory judgment that, as the insurer for the project, the defendant is obligated to defend Belli in the Bronx County action. Compl. ¶¶ 13-15. While Belli concedes that it would not be entitled to defense in an action only alleging repair of defective pipe installation, it claims that Bovis could also recover for any costs of tearing down and replacing finished walls in order to access the pipes, and could "pass through" negligence claims asserted by the SCA. Pl.'s Reply Mem. of L. in Supp. of Cross-Motion for Summ. J. 3-6, Doc. Entry 17, Apr. 12, 2012 ("Pl.'s Reply Mem.").

Having removed the case to this court, Liberty moves to dismiss for failure to state a claim upon which relief can be granted. Belli moves for summary judgment. Bovis' complaint only states a claim for the cost of repair of the pipes. Potential recovery for any other damages is too hypothetical at this stage. Since the only damages claimed are for injury to Belli's own work, which is not covered by the policy, defendant's motion to dismiss is granted. Plaintiff's motion for summary judgment is denied as moot.

## II.    Facts

The numerous attachments to the complaint provide a sufficient factual record. *See, e.g.*, Notice of Removal 44 (Letter from Paul Belli to Khem Henry & Bryan Paul of Willis of New York) ("Willis Tender"), Doc. Entry 1, Jan 11, 2011; *id.* 50-52 (Letter from Terrence J. O'Connor of Belli to Stephanie Corbin of Liberty) ("Liberty Tender"); *id.* 41 (Letter from Anjay Shah of SCA to Edgar Vera of Bovis) ("SCA Letter")); *see also, e.g.*, *DiFolco v. MSNBC Cable Inc.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a

3

claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

### A.    Project

Belli, a New York corporation, is a construction subcontractor specializing in plumbing and heating installations. Compl. ¶ 1.   Liberty is a Massachusetts corporation licensed to issue insurance policies in New York. *Id.* ¶ 2.

In August 2005, Bovis entered into a contract with the SCA to perform general construction work ("Project"). Underlying Compl. ¶ 8.  Bovis and Belli signed a subcontract in March 2006 for mechanical work on the Project, including the installation of gas pipes. *Id.* ¶ 9. Belli alleges that it completed the work; fully performing its contractual obligations. *Id.* ¶ 10.

### B.    Insurance Policy

From January 1, 2008 through January 1, 2011, Liberty insured the SCA under a Commercial General Liability Policy.  As a subcontractor, Belli is a named insured. *See* Potashner Aff. Ex. 1 at 41 (Certificate of Insurance), Doc. Entry 5, Feb. 13, 2012; Def.'s Mem. of Law in Supp. of Mot. to Dismiss the Verified Compl. 5-6, Doc. Entry No. 5, Feb. 13, 2012.

The Policy obliges Liberty to "pay those sums that the insured becomes legally obligated to pay because of . . . 'property damage' . . . only if the . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Policy §§ I-1a, b.  It imposes a "right and duty to defend the insured against any 'suit' seeking those damages," but disclaims any duty to defend a suit to which the policy does not apply.  Policy § I-1a.  An "occurrence" triggering the insurer's duty is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* § V-13.

4

The Policy does not apply to damages flowing from the insured's breach of contract or a defective product or labor. It excludes the cost of restoring property damaged in repairs to defective work. Not covered are:

> 1. "'Property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."
>
> 2. "'Property *damage' to . . . [t]hat particular part of real property* on which you or any subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or . . . [t]hat particular part of any property *that must be restored, repaired or replaced because 'your work' was incorrectly performed* on it."
>
> 3. "'Property' damage to 'your work' arising out of it or any part of it and included in the 'products-completed operation hazard.'"
>
> 4. "'*Property damage' to 'impaired property'* or property *that has not been physically injured arising out of [a] defect,* deficiency, inadequacy or dangerous condition *in 'your product' or 'your work'*; or [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

*Id.* §§ I-2b, j, l, m (emphasis added).

### C.   Gas Leak

In June 2011 a gas leak was detected. Potashner Aff. Ex. 4 at 9 (Jobsite Incident Report), Doc. Entry 5, Feb. 13, 2011. The SCA representative informed Bovis of the leak. *Id.* at 7; Compl ¶ 9. Bovis and Belli dispatched representatives to the site for an inspection. Potashner Aff. Ex. 4 at 23-24 (Mem. of Edgar Vera), Doc. Entry 5, Feb. 13, 2011. Leaking pipes installed by Belli were observed. *Id.* The SCA then assessed a backcharge against Bovis in order to recoup expenditures incurred in fixing the defective pipes. Underlying Ans. & Countercl. ¶ 25.

Belli asserts that the counterclaim for replacement of the pipes presents a "*potential* for property damage to finished surfaces that would result from *possible* pipe removal or other remedial action." Compl. ¶ 8 (emphasis added). At oral argument, both parties conceded that

5

they were not aware of whether and to what extent walls were opened in order to access the pipes. Tr. of Hr'g, Apr. 19, 2012.

### D. State Action

In June of 2011, Belli sued Bovis in Supreme Court of New York, Bronx County claiming breach of contract. Compl. ¶ 6. Belli alleged that the contract entitled them to payments of $3,899,428.87, but that Bovis has only paid $3,743,642.71, leaving an unpaid balance of $155,786.16. Underlying Compl. ¶ 11-12.

Bovis filed an answer including six affirmative defenses. Compl. ¶ 6. In its first affirmative defense, Bovis included a counterclaim, asserting that Belli had breached the contract by failing to perform its own obligations. Compl. ¶ 6; Underlying Ans. & Countercl. ¶¶ 22-23. Specifically, Bovis accused the plaintiff of "defectively performing and refusing or neglecting to complete its Subcontract work." Underlying Ans. & Countercl. ¶ 23. Because the SCA assessed a backcharge for the repair work, Bovis claims it has "incurred or will incur additional and increased costs of construction" totaling not less than $100,000 "to repair plaintiff's defective Subcontract work or to complete plaintiff's unfinished Subcontract work," for which Belli is liable. *Id.* ¶ 25-27.

### E. SCA Threatens to Sue

In July 2011, the SCA wrote Bovis indicating that it intended to hold Bovis and Belli liable for costs and damages related to the negligent installation of the pipes. Compl. ¶ 7. The SCA alleged that the gas leaks were caused by use of lampwick in the pipe joint fittings. SCA Letter of Jul. 22, 2011. Lampwick's use is prohibited by the National Fire Protection Association and Department of Buildings Codes. *Id.*

### F. Belli's Unsuccessful Tender

6

In August 2011, Belli notified Liberty that the Bovis' state counterclaim triggered Liberty's duty to defend. Liberty Tender. It claimed that the repair necessitated damage to a building element that was not Belli's work product—i.e., that walls would have to be torn down in order to get at the defective pipes. *Id.* In a follow-up tender package, it notified Liberty of a threatened negligence suit by the SCA. O'Connor Decl. Ex. 1-2 (Belli's August 25, 2011 Tender Packages), Doc. Entry 9, Feb. 28, 2012. It also claimed that the gas leak itself could constitute "property damage" triggering the duty to defend. *Id.*

Liberty disclaimed coverage on three grounds: 1) economic loss rather than covered property damage was sought; 2) even if the loss resulted in property damage, it was not caused by an "occurrence," as required in the CGL; and 3) the damages fall within the "Damage to Your Work" exclusion of the CGL policy. *Id.*

### G.     Instant Action

On November 11, 2011, Belli filed the instant action in the Supreme Court of New York, Kings County, seeking a declaratory judgment that Liberty 1) must defend it against the counterclaim in the underlying action, and 2) is liable for attorneys fees thus far expended in that action. Compl. ¶¶ 13-15, 19-22. Liberty timely removed to federal court. *See* Notice of Removal, Doc. Entry 1, Jan. 11, 2011.

### H.     Potential SCA Claims Against Bovis and Belli

The SCA is not a party to the either the instant or Bronx County actions. In 2009, Bovis sued the SCA in the Supreme Court of New York, Queens County in another matter allegedly related to the Project. *Bovis Lend Lease LMB, Inc. v. New York City School Auth*, No. 023878/2009 (Queens Cnty. Sup. Ct. 2009). Belli informed the court that this Queens County action has been consolidated with the Bronx County action for trial. Tr. of Hr'g, Apr. 19, 2012.

7

It asserts that the SCA has stated a negligence claim relating to the gas leak in that suit. *See* Pl.'s Reply Mem. 5. The record of the Queens County action reveals that SCA has not asserted such a claim. *See* Doc. Entry 20 Apr. 18, 2012; Tr. of Hr'g, Apr. 19, 2012.

### III.    Jurisdiction

The parties to the present action are in complete diversity. Compl. ¶¶ 1-2. More than $75,000 is in controversy. Notice of Removal ¶ 5. This court has jurisdiction. *See* 28 U.S.C. § 1332.

### IV.    Choice of Law

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). In New York, the "first step in any case presenting a . . . choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co.*, 613 N.E.2d 936, 938 (N.Y. 1993). Assuming that an actual conflict exists between the laws of jurisdictions with interests in having their law applied to the case, the court is to apply interest analysis to determine which jurisdiction has the greatest interest in having its law applied to the dispute. *See, e.g., Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994). In applying interest analysis, two separate inquiries are required: (1) the determination of the significant contacts and their locations; and (2) the determination of whether the relevant law is to conduct-regulating or loss-allocating. *See id.*

In contract cases, New York courts apply "[t]he center of gravity or grouping of contacts choice of law theory." *Allstate*, 613 N.E.2d at 939 (internal quotation marks omitted). "Under this theory, the courts, instead of regarding as conclusive the parties' intention or the place of

8

making or performance, lay emphasis rather upon the law of the place 'which has the most significant contacts with the matter in dispute'." *Auten v. Auten*, 124 N.E.2d 99, 101 (N.Y. 1954).

New York has the most significant contacts. The policy covers New York entities performing work on a New York City school. Belli, a New York corporation, seeks indemnification and defense in a suit in New York state court. No party disputes that New York law governs this action. *See, e.g., Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (noting that implied consent is sufficient to establish the applicable choice of law); *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001) (same). New York law applies.

## V.      Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of claims when the pleading party has failed "to state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## VI.      Duty to Defend

Plaintiff has argued that it is entitled to defense in the underlying action on two main grounds: 1) Bovis might recover for the cost of tearing down and replacing walls in the course of repairing the defective pipe; and 2) Bovis might "pass through" negligence claims from the SCA.

### A.    Generally

"An insurer's duty to defend its insured is exceedingly broad." *Regal Constr. Corp. v. Natl. Union Fire Ins. Co. of Pittsburgh*, 930 N.E.2d 259, 261 (N.Y. 2010) (internal citations omitted). It derives from the contractual relationship between the insurer and the insured, *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 93 (N.Y. 1991), and "arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim." *Worth Constr. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (internal citations omitted). This standard applies equally to additional insureds and named insureds under CGL policies. *Id.* at 1045. Whether a complaint falls within a policy's coverage depends on the facts alleged in the underlying complaint rather than the conclusions drawn by the pleader or a party's characterization of a claim. *Exeter Bldg. Corp. v. Scottsdale Ins. Co.*, 913 N.Y.S.2d 733, 735 (2d Dep't 2010). "An insurer is relieved of the duty to defend only if 'there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co.*, 477 N.E.2d 441, 444 (N.Y. 1985) (alterations in original).

In interpreting the terms of an insurance policy, ambiguities are construed in favor of the insured. *Id.* (citing *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280 (N.Y. 1978). "If the policy is unambiguous, its interpretation is strictly a question of law for the court." *Uniroyal, Inc. v. Home*

*Ins. Co.*, 707 F. Supp. 1368, 1374 (E.D.N.Y. 1988) (citing *Caporino v. Travelers Ins. Co.*, 465 N.E.2d 26, 27 (N.Y. 1984) (per curiam)).

### B.   No Duty When Only Property Damaged is Insured's Defective Work Product

Substantial case law exists interpreting and applying the terms of defense and indemnification clauses in CGL policies.  Since these policies largely contain the same language, a review of similar cases is useful.

CGL policies—including the policy at issue–generally do not cover breach of contract actions, since claims for bodily injury or property damage are not presented.

> "The risk intended to be insured [by CGL insurance] is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other than to the product or completed work itself,* and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. *This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against.* The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations-What Every Lawyer Should Know,* 50 Neb. L. Rev. 415, 441 (1971).

*J.Z.G. Res., Inc. v. King,* 987 F.2d 98, 102-03 (2d Cir. 1993) (emphasis added); *see also, e.g., Structural Bldg. Prods. Corp. v. Bus. Ins. Agency, Inc.*, 722 N.Y.S.2d 559, 562 (2d Dep't 2001). Contractors may not use a CGL policy as a means to procure defense or indemnification for their allegedly defective work product. *Exeter*, 913 N.Y.S.2d at 735.  "To hold otherwise would render an insurance carrier a surety for the performance of its insured's work." *Structural Bldg. Prods.*, 722 N.Y.S.2d at 562.

Breach of contract or warranty is only an "occurrence" covered by a CGL policy if, as a result of the breach, the defective product damages property other than the defective product itself. *See, e.g., Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 961 F.2d 387, 389-90 (2d Cir. 1992). In *Jakobson Shipyard, Inc.*, for example, the plaintiff, a tugboat manufacturer, sought a declaratory judgment stating that Aetna, their CGL insurer, had a duty to defend in a breach of warranty suit arising out of allegedly defectively-installed steering mechanisms. *Id.* at 388. Plaintiff's insurance policies—like that at issue in this case—only required defense for damages caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 389. The Court of Appeals for the Second Circuit found that, because defective installation is not an "accident," it was not an occurrence that triggered the insurer's duty to defend:

> [T]here is no pertinent ambiguity in the policies' definition of "occurrence." Were we to construe the words "accident" or "continuous or repeated exposure to conditions" as encompassing damage to a product resulting from the product's failure to perform according to contract specifications, we would expand the agreed-upon coverage. An accident, given its dictionary meaning, is "an event or condition occurring by chance or arising from unknown or remote causes." *Webster's Third New International Dictionary* 11 (1981). We might add that in common parlance an external force of some kind is usually involved. However, the [defect] was result of faulty workmanship that did not comply with the specifications of the contract and [the underlying] action sounded in contract. There was no chance occurrence, no unknown or remote cause, and no unexpected external force.

*Id.* at 389; *see also J.Z.G. Res., Inc. v. King*, 987 F.2d 98, 102-103 (2d Cir. 1993) (analyzing New York cases and holding that an event was only an "occurrence" where "the claim against the insured was not simply one for faulty workmanship, but rather for consequential property damage inflicted upon a third party as a result of the insured's activity"); *Pavarini Constr. Co., Inc. v. Cont'l Ins. Co.*, 759 N.Y.S.2d 56, 57-58 (1st Dep't 2003) (holding that claim for

12

"damages to waterproofing, caulking and expansion joint work were said to be caused by the 'volumetric expansion and contraction' of concrete components" was "essentially for breach of contract and, as we have observed, a contract default under a construction contract is not to be equated with an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions' under the subject policies").

Insurers are not obligated to defend claims where the only "damage" alleged is to the defective product installed by the insured. *See, e.g., Jakobson Shipyard, Inc.*, 961 F.2d at 389-90; *see also Structural Bldg. Prods.*, 722 N.Y.S.2d at 561-62 (holding that there was no "property damage" triggering the duty to defend where the only "damage" claimed is to the defective product itself); *see also Exeter*, 913 N.Y.S.2d at 735-36 (finding that similar claim "falls solely and exclusively under the work product exclusions").

By contrast, where a defective product damages property other than itself, CGL insurers are obligated to defend claims seeking compensation for damage to that other property. *See Apache Foam Products v. Continental Insurance Co.*, 528 N.Y.S.2d 448, 449 (4th Dep't 1988) (holding that an insulation manufacturer's CGL insurer had a duty to defend its insured against the claims where the suing party sought to recover for damage to "portions of the roofs . . . involving work performed by parties other than the named insured," as the damages did not fall under the policy's work product exclusions). Similarly, "[w]hen one product is integrated into a larger entity, and the component product proves defective, the harm is considered harm to the entity to the extent that the market value of the entity is reduced in excess of the value of the defective component." *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 332 N.E.2d 319, 322 (N.Y. 1975) (holding that the insured manufacturer of defective straps on ski bindings was entitled to defense because the defect so impaired the value of the bindings as to constitute property damage

13

to the bindings themselves); *see also Md. Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 627 (2d

Cir. 1993) (stating that changes in the market value of a property caused by the need to remove

asbestos constitutes property damage for the purpose of insurance claim); *Chubb Ins. Co. of N.J.*

*v. Hartford Fire Ins. Co.*, No. 97 CIV. 6935, 1999 WL 760206, at *8 (S.D.N.Y. 1999) ("Under

New York case law, when an insured is unaware . . . of a defect in its component of a product,

which defect diminishes the value of the product into which it is incorporated, resulting in

damage, such damage is considered to arise out of an 'occurrence.'"), *aff'd* 229 F.3d 1135;

*Marine Midland v. Samuel Kosoff & Sons, Inc.*, 400 N.Y.S.2d 959, 962 (4th Dep't 1977)

(holding, in a case against insured contractors following installation of a defective roof, that the

duty to defend was triggered where the complaint by the building owner alleged "damages well

in excess of the value of the roof," including "damages to the building distinct from the roof

itself . . . as a result of the defective roof, the value of the [building] was reduced beyond the

value of the roof[;] that differential is harm not to the roof, but to the building itself").

### C.      Defective Pipes Not an Occurrence Causing Property Damage

Belli concedes that the cost of repairing or replacing its defective gas pipes constitutes

damage to its own work that does not trigger Liberty's duty to defend. Pl.'s Reply Mem. of L. in

Supp. of Cross-Motion for Summ. J. 1, Doc. Entry 17, Apr. 12, 2012 ("Pl.'s Reply Mem.").

Instead it argues that Bovis' counterclaim for "unspecified backcharges" permits Bovis to

recover both for completed and future repairs to the defective gas pipes. Pl.'s Mem. 1-2. These

repairs, Belli alleges, might include charges for tearing down walls in order to access the pipes,

as well as for replacing those walls once the repairs are complete. *Id.* 3-4; Pl.'s Reply Mem. 1-2.

It claims that potential damage to these finished surfaces constitutes "property damage"

triggering Liberty's duty to defend under the insurance policy. Pl.'s Mem. 3-4; Pl.'s Reply

Mem. 1-2. Belli also alleges that the leaking of gas into the building is itself "property damage."
Pl.'s Mem. 3-4.

Belli concedes that is has no knowledge of the exact location and nature of the gas leak.
*See* Tr. of Hr'g, Apr. 19, 2012. It has no evidence that the leaking gas damaged any property. It
is unaware of what actions were required in order to repair the pipes. *Id.* It does not know what,
if any, damage was done to the building's walls in repairing in the pipes.

The counterclaims alleged by Bovis do not trigger Liberty's duty to defend Belli. Bovis
claims that the plaintiff "defectively installed certain gas pipes at the Project and that gas had and
was leaking from said pipes;" it seeks to recover only the costs it "has incurred or will incur . . .
to repair plaintiff's defective Subcontract work or to complete plaintiff's unfinished Subcontract
work." Underlying Ans. and Countercl. ¶¶ 25-26. The claim, as pled, is a claim for economic
loss resulting from breach of contract.

The gas leak is not an independent accident triggering coverage; its cause was the alleged
defect in the pipes installed by Belli. This defect is not an "occurrence" as defined by the Policy,
since there is no evidence that it damaged elements other than the defective product. *See, e.g.,*
*Jakobson*, 961 F.2d at 389. Belli does not know the extent of any opening of the walls that took
place, if any. Since any property damage to building elements other than plaintiff's own
defective product is speculative, Liberty's duty to defend is not triggered.

### D.  Speculative SCA Claims Not Considered

Belli also claims that Bovis might use its counterclaim to "pass through" non-contractual
damages, such as damages to the SCA's premises. It asks the court to read the SCA's threatened
negligence suit and its potential claims against Belli and Bovis, such as "an impaired value claim

consisting of administrative costs of past or future inspections, future monitoring costs, loss of use of the building, etc.," into Bovis' counterclaim. Pl. Mem. at 7-8.

As noted above, *see* Part II(H), *supra*, the SCA has not yet sued Belli, but has been sued by Bovis in a separate action. Plaintiff argues that "Bovis' counterclaim is in the nature of a pass-through of the SCA's claims against Bovis" and that "Bovis' counterclaim should be construed to include the SCA's negligence claim [including its allegations and theories of recovery] for purposes of triggering the duty to defend." Pl.'s Reply Mem. 5-6. In essence, plaintiff argues that the duty is triggered because Bovis might seek to use its counterclaim to indemnify itself against the SCA's claims. Belli's position is that while Bovis' claim may appear to be a contract claim for economic loss, it is in fact a negligence claim for losses covered by the Policy.

Only the allegations in the four corners of Bovis' underlying counterclaim will be considered. That was the only live suit against Belli when tender was made, and remains the only claim against it. The SCA has yet to file an answer in the action with Bovis. While Liberty is aware of the possibility of an SCA suit against both Bovis and Belli, the SCA has not yet filed any claims against either company.

In determining whether to defend its insured, Liberty is not required to anticipate speculative and uncertain possible future claims against Belli. Since the SCA has yet to file an answer in the action against Bovis, "pass through" of any negligence claims is purely hypothetical.

**VII. Conclusion**

16

Because Belli has failed to state a claim upon which relief can be granted, Liberty's motion to dismiss is granted; the action is premature. Belli's motion for summary judgment is denied as moot. No costs or disbursements.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 19, 2012
Brooklyn, New York

17